12-3360-cv
Halebian v. Berv

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of November, two thousand thirteen.

PRESENT: ROBERT D. SACK,
BARRINGTON D. PARKER,
REENA RAGGI,
*Circuit Judges.*

------------------------------------------------------------------------

JOHN HALEBIAN, individually and on behalf of all other similarly situated trust beneficiaries and derivatively on behalf of Citifunds Trust III,

*Plaintiff-Appellant*,

v.  No. 12-3360-cv

ELLIOT J. BERV, DONALD M. CARLTON, A. BENTON COCANOUGHER, MARK T. FINN, STEPHEN RANDOLPH GROSS, DIANA R. HARRINGTON, SUSAN B. KERLEY, ALAN G. MERTEN, R. RICHARDSON PETTIT,

*Defendants-Appellees,*

CITIFUNDS TRUST III,

*Nominal Defendant-Appellee.*

------------------------------------------------------------------------

| | |
|---|---|
| APPEARING FOR APPELLANT: | JOEL C. FEFFER (Daniella Quitt, *on the brief*), Harwood Feffer LLP, New York, New York. |
| APPEARING FOR APPELLEES: | MICHAEL K. ISENMAN (James S. Dittmar, Goodwin Procter LLP, Boston Massachusetts; Matthew Hoffman, William M. Jay, *on the brief*), Goodwin Procter LLP, New York, New York. |

Appeal from an order of the United States District Court for the Southern District of New York (Naomi Reice Buchwald, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on July 26, 2012, is AFFIRMED.

Plaintiff John Halebian, a shareholder in nominal defendant Citifunds Trust III ("CitiTrust" or the "Trust"), appeals from an award of summary judgment in favor of defendants, nine of the ten trustees of CitiTrust (collectively the "Trustees"), dismissing Halebian's claim that the Trust's Board of Trustees (the "Board") breached its fiduciary duties when considering and recommending a new investment advisory agreement to shareholders after the sale of investment advisor Citi Fund Management, Inc. ("CFM") from Citigroup, Inc., to Legg Mason, Inc.  Halebian contends that the district court erred in finding that the business judgment doctrine shielded the Trustees' determination that it was not in the Trust's best interest to pursue a derivative proceeding on Halebian's claims. Halebian also challenges the denials of his motions for discovery and to amend the complaint.  We assume the parties' familiarity with the underlying facts and the record of prior proceedings, which have been discussed at length in five prior opinions.  See

Halebian v. Berv ("Halebian I"), 631 F. Supp. 2d 284 (S.D.N.Y. 2007); Halebian v. Berv ("Halebian II"), 590 F.3d 195 (2d Cir. 2009); Halebian v. Berv ("Halebian III"), 457 Mass. 620, 981 N.E.2d 986 (2010); Halebian v. Berv ("Halebian IV"), 644 F.3d 122 (2d Cir. 2011); Halebian v. Berv ("Halebian V"), 869 F. Supp. 2d 420 (S.D.N.Y. 2012).  We here reference only such facts and proceedings as are necessary to explain our decision to affirm.

1.   Motion for Summary Judgment

We review an award of summary judgment de novo, viewing the record evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.  See Townsend v. Benjamin Enters., Inc., 679 F.3d 41, 47 (2d Cir. 2012).  In deciding whether a genuine issue of material fact exists as to whether the business judgment doctrine shields the Trustees' decision to terminate the derivative proceeding, we look to substantive state law.  See generally Kamen v. Kemper Fin. Servs., 500 U.S. 90 (1991); Burks v. Lasker, 441 U.S. 471 (1979).  Here, Massachusetts Business Corporations Act, General Laws Chapter 156D § 7.44(a) applies.  In the context of a derivative proceeding, that law "protects a corporation's decision that prosecution of the claim demanded by the shareholder is not in the best interests of the corporation where the decision is made in good faith by independent decision makers after reasonable inquiry."  Halebian III, 457 Mass. at 627 n.11, 931 N.E.2d at 991.

Massachusetts places the burden on the Trustees seeking dismissal to show that "a majority of the board of directors was independent" at the time of the challenged

determination not to pursue the derivative claims. Mass. Gen. Laws ch. 156D, § 7.44(d), (e). Upon such a showing, the burden shifts to plaintiff to demonstrate that the determination was not made in good faith after a reasonable inquiry. See id. § 7.44(e). If, on the other hand, independence is not shown, the burden remains on defendants to demonstrate good faith and a reasonable inquiry. See id.

In contrast to a typical summary judgment motion, a shareholder-plaintiff is not required to adduce evidence; he need only allege particularized facts that raise a genuine issue as to the Trustees' independence, good faith, or reasonable investigation. See Halebian IV, 644 F.3d at 131 n.9 (citing Mass. Gen. Laws ch. 156D, § 7.44(d)). Conclusory assertions or allegations based on speculation or conjecture, however, are not sufficient to overcome the business judgment doctrine. Cf. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998) (holding that "non-moving party may not rely on conclusory allegations or unsubstantiated speculation" to defeat motion for summary judgment).

Halebian argues that the district court improperly granted summary judgment because (a) it relied on inadmissible evidence proffered by the Trustees and (b) there is a genuine issue of fact as to the Trustees' independence in conducting the investigation.

A. Admissibility of Evidence

Halebian submits that the Report of the Demand Review Committee, dated June 29, 2006 ("the Report"), attached to the Declaration of Mark T. Finn, one of two Trustees who investigated the derivative claim together with outside counsel, cannot support summary judgment because it is inadmissible hearsay. This argument fails because the district

4

court did not consider the Report for the truth of any matter asserted therein, but rather to show the extent and scope of the investigation conducted. See Halebian V, 869 F. Supp. 2d at 455. Because Finn had personal knowledge of the investigation, we identify no error in the district court's reliance on the Report for this purpose. See Finn Decl. ¶¶ 1, 16–19. To the extent Halebian objects to the admissibility of any other portions of the record, we agree with the district court that such objection is insufficiently specific to warrant further consideration. See Halebian V, 869 F. Supp. 2d at 443 n.24.

B.    Trustees' Independence

The record indicates that the Trustees had no direct financial interest in the underlying transaction, and that the Trust Declaration indemnified them for any potential liability based thereon, circumstances supporting a finding of independence as required for the application of the business judgment doctrine.[1]

In urging otherwise, Halebian contends that a majority of the Trustees were "interested" as defined in the Investment Company Act of 1940, see 15 U.S.C. § 80a-1 et seq., ("ICA"), because they were "controlled" by CitiTrust, Citigroup, or Legg Mason through the receipt of substantial compensation and retirement benefits, see id. § 80a–2(a)(3)(C) (providing that "affiliated person" includes "any person directly or indirectly

---

[1] Assuming arguendo that a question about Trustee Merten's independence arose from the fact that the former Chairman of "Primerica Financial Services" recommended Merten's appointment to the Board a decade earlier when both were affiliated with Cornell University, Halebian would still have to raise a genuine issue of fact as to the independence and disinterest of at least three other Board members to deprive the Board's decision of business judgment protection. This he has failed to do.

5

controlling, controlled by, or under common control, with such other person"); id. § 80a–2(a)(19) (providing that "interested person" of another person/entity includes any "affiliated person").[2]

Our precedent, however, instructs that "allegations regarding the [Trustees'] appointment, compensation and workload" are insufficient on their own to support an inference of control. Scalisi v. Fund Asset Mgmt., L.P., 380 F.3d 133, 140–41 (2d Cir. 2004).[3] Neither is Halebian's claim supported by the record where, as here, the Trust Declaration, an admissible business record, states that Trustee compensation is set by the Trustees, and that Trustees can only be removed by action of the other Trustees or the shareholders. Halebian nevertheless argues that the Trustees' receipt from Citigroup mutual funds of $840,000 in aggregate compensation and $3,600,000 in accrued aggregate retirement benefits, constituting between 25% and 50% of annual income for some Trustees, supports an inference of investment advisors' control, and also relies on a statement by John C. Bogle, founder of Vanguard Group, to support this inference, see Appellant's Br. 30 (quoting John C. Bogle, The Clash of the Cultures 70 (2012) (stating

---

[2] We need not here reconcile the ICA's rebuttable presumption that a natural person cannot be controlled, see 15 U.S.C. § 80a–2(a)(9), with the initial burden placed on the Trustees under § 7.44 to show independence because like the district court, we conclude that the Trustees have demonstrated the independence of the Board under both Massachusetts law and the ICA.

[3] Although Scalisi involved the application of Maryland law, Massachusetts law is no different on this point. See Forsythe v. Sun Life Fin., Inc., 417 F. Supp. 2d 100, 111 (D. Mass. 2006) ("In the mutual fund context, . . . the fact that trustees receive substantial compensation for their service on multiple boards within a fund complex is not in itself sufficient to establish that they were under the 'control' of the adviser.").

that fund manager usually "plays an influential role in selecting the funds' directors")). We have rejected this precise argument, as have at least two sister circuits and a number of district courts in cases involving similar inquiries into trustee independence when approving investment advisory agreements. See Amron v. Morgan Stanley Inv. Advisors Inc., 464 F.3d 338, 345 (2d Cir. 2006); see also Krantz v. Prudential Invs. Fund Mgmt. LLC, 305 F.3d 140, 142 (3d Cir. 2002); Migdal v. Rowe Price-Fleming Int'l, Inc., 248 F.3d 321, 330 (4th Cir. 2001); Verkouteren v. Blackrock Fin. Mgmt., Inc., 37 F. Supp. 2d 256, 259 (S.D.N.Y. 1999), aff'd, 208 F.3d 204 (2d Cir. 2000) (unpublished disposition); Krantz v. Fidelity Mgmt. & Research Co., 98 F. Supp. 2d 150, 157 (D. Mass. 2000).

Nor can Halebian raise a genuine issue as to independence through conclusory allegations that compensation ranging from $82,600 to $120,200 for an individual Trustee's service on anywhere from 32 to 37 boards is "far greater" than that received by board members in the above-cited cases, or in cases relied upon by the district court in rejecting this same argument. See Halebian V, 869 F. Supp. 2d at 450 n.30, 450 n.31, 451. Further information as to what portion of the compensation included retirement benefits or how many Trustees relied on said compensation for between 25% and 50% of their income would not warrant a different conclusion. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment."); see also Harhen v. Brown, 431 Mass. 838, 843 n.5, 730 N.E.2d 859, 864 (Mass. 2000) (holding that receipt of "usual and customary director's fees and benefits" does not render director interested).

Insofar as Halebian also contends that the ICA precludes Trustees from investigating their own actions, that argument is foreclosed by the well-settled principle that state law, not the ICA, governs a mutual fund's investigation and rejection of a pre-suit demand. See Burks v. Lasker, 441 U.S. at 485 n.15 (rejecting argument that "mutual fund directors can never be truly disinterested in suits involving their codirectors" as a matter of law, observing that "[w]hile lack of impartiality may or may not be true as a matter of fact in individual cases, it is not a conclusion of law required by the ICA"); see also Galef v. Alexander, 615 F.2d 51, 60–62 (2d Cir. 1980) (observing that whether director's "interest" in underlying transaction, and therefore potential liability, "deprive him of the power to initiate a business judgment summary dismissal of [a derivative lawsuit]" is a matter of state law). Massachusetts law requires assessment of "actual bias" in deciding director independence; "the mere naming of the director as a defendant or the director's approval of the act" at issue does not give rise to a presumption of lack of independence. Cmt. 1 to Mass. Gen. Laws ch. 156D, § 7.44; see also Mass. Gen. Laws ch. 156D, § 7.44(c)(2), (3).[4] Here, Halebian makes no specific factual allegations of the Trustees' self-interest or bias in favor of Citigroup, Legg Mason, or CFM. Mere speculation that a more favorable result might have been obtained is not sufficient to create a genuine issue as to Trustees' independence. Nor is the Trustees' independence called into question by (1) the Trustees'

---

[4] Comment 1 cites approvingly to Lewis v. Graves, 701 F.2d 245, 248 (2d Cir. 1983), which states that "absent specific allegations of self-dealing or bias on the part of a majority of the board, mere approval and acquiescence are insufficient to render demand futile."

use of echo-voting, see Halebian II, 590 F.3d at 210 (holding that, regardless of its legality, there was no evidence that Trustees knew that "echo-voting" was illegal or that they misled investors in Proxy Statement); (2) the Trustees' approval of an investment advisory agreement with a "soft dollars" provision, see generally Krantz v. Fidelity Mgmt. & Research Co., 98 F. Supp. 2d at 156–57 (rejecting argument that "soft dollar" arrangements show lack of disinterest given that such arrangements are permitted by securities law and plaintiff did not allege improprieties with respect to arrangements); (3) the fact that Trustees' investigation took 131 days, see Halebian III, 457 Mass. at 631, 632, 931 N.E.2d at 994 (observing that Massachusetts statute both allows and anticipates some inquiries taking longer than 120 days); (4) the Trustees' choice to investigate themselves, see Mass. Gen. Laws ch. 156D, § 7.44(b) (affording board option of refusing demand by vote of majority of independent directors); § 7.44(c) (stating presumption of non-independence does not arise from director being named as defendant or approving underlying transaction); and (5) the Trustees' decision not to consider investment advisors other than Legg Mason, particularly where, as here, the record documents the Trustees' industry experience and qualifications to make an informed decision based on comparative information.  Halebian cites no basis for questioning the Trustees' qualifications or for requiring that they consider other investment advisors.  Nor does not he indicate how the Trustees' failure to do so injured the Trust.

  Equally unconvincing is Halebian's contention that the Proxy Statement's "Board Considerations" section fails to show consideration of investors' interest.  The Proxy

9

Statement specifically references "the potential benefits to Fund shareholders from being part of a combined fund family with Legg Mason sponsored funds, including possible economies of scale and access to investment opportunities" as among the considered circumstances. Proxy Statement 15–16, J.A. 95–96. Insofar as the Proxy Statement, in contrast to the Report, is silent on "compliance issues" with Citigroup, such omitted information, which only further supports the Trustees' recommended approval of an investment advisory agreement with Legg Mason, hardly creates an inference that the Trustees were biased in favor of Citigroup to the detriment of investors. That Citigroup or Legg Mason may have benefitted from the Trustees' recommendation is not sufficient by itself to support an inference that the Trustees were biased in their favor. Halebian needed to allege particular facts that would support an inference that the Trustees acted in a manner that benefitted themselves, Citigroup, and/or Legg Mason to the detriment of the investors. He failed to do so.

Thus, we conclude that neither the Trustees' role as defendants nor their involvement in the underlying transaction raises a genuine question as to their otherwise demonstrated independence so as to defeat summary judgment.

  C. <u>Good Faith and Reasonableness of Investigation</u>

Where Trustees' independence is not in question, Massachusetts presumes that a decision to reject a shareholder demand was the exercise of valid business judgment, "absent a showing of bad faith or lack of investigation into the demand." <u>Harhen v. Brown</u>, 431 Mass. at 847, 730 N.E.2d at 867; <u>see</u> Mass. Gen. Laws ch. 156D, § 7.44(e).

Halebian concedes that he cannot overcome this presumption on the existing record, but he faults the district court for requiring him to do so without discovery. We have held that when a party advises the court that it needs discovery to defend against a motion for summary judgment, see Fed. R. Civ. P. 56(d), "the court should defer decision of the motion until the party has had the opportunity to take discovery and rebut the motion." Commercial Cleaning Servs., LLC v. Colin Serv. Sys., Inc., 271 F.3d 374, 386 (2d Cir. 2001). Nevertheless, we review the denial of Rule 56(d) discovery only for abuse of discretion. See Miller v. Wolpoff & Abramson, LLP, 321 F.3d 292, 300 (2d Cir. 2003).[5] We identify no such abuse here.

Halebian argues that the district court necessarily abused its discretion because discovery was required by Halebian IV. This misconstrues our instructions in that case. Although we observed that "various allegations in plaintiff's opposition to the defendants' motion . . . seem to us to arguably present a specific argument as to what more discovery would yield," Halebian IV, 644 F.3d at 133 n.11, we also stated that "[w]hether the plaintiff's arguments on that issue are convincing . . . is a question left to the sound discretion of the district court on remand," id. (internal quotations marks, citations, and alterations omitted). Indeed, we observed that "the district court may well have acted

---

[5] In denying discovery, the district court also cited Massachusetts law requiring a stay of discovery upon the filing of a motion for dismissal, unless "good cause" is shown for "specified discovery." Mass. Gen. Laws ch. 156D, § 7.44(d). In Halebian IV, we did not identify any conflict between the Rule 56 and § 7.44 standards for obtaining discovery, noting that both placed "the availability of further discovery . . . within the district court's discretion." Halebian IV, 644 F.3d at 133.

within its discretion in denying the plaintiff's request for discovery, particularly in light of the defendants' submission of 'thousands of pages detailing the backgrounds of the directors at issue, as well as the extensive efforts made by the independent counsel in preparing its review of the demand for the committee and the Board.'" Id. at 133 (quoting Halebian I, 631 F. Supp. 2d at 298). Thus, there is no merit in Halebian's contention that discovery was required by Halebian IV.

On remand, Halebian submitted the type of generalized discovery requests seeking all of the data underlying the Report and associated with the drafting of the Report, which we have generally found sufficient in cases after a finding or concession that board independence is at issue. See, e.g., Joy v. North, 692 F.2d 880, 893 (2d Cir. 1982). However, as discussed above, Halebian has not alleged particularized facts sufficient to raise any question about the Trustees' independence or about whether the decision to reject the demand was a valid exercise of business judgment. Having received the Report and over a 1000 pages of exhibits and multiple sets of Trustee questionnaires, Halebian possessed sufficient discovery on the issues of independence, good faith, and reasonableness to draft discovery requests tailored to the issues in this case, or to set forth "specified reasons" as to why he could not "present [particularized] facts essential to justify [his] opposition." Fed. R. Civ. P. 56(d). Thus, we identify no abuse of discretion in the district court's determination that, in the absence of any allegations specifying what Halebian expected to learn from the requested discovery that he could not ascertain from what he already possessed, his "confidence that discovery will reveal any evidence

favorable to him at all is merely speculation," and therefore further discovery was not warranted. Halebian V, 869 F. Supp. 2d at 441; see National Union Fire Ins. Co. of Pittsburgh v. Stroh Cos., 265 F.3d 97, 117 (2d Cir. 2001) ("Even where a Rule 56(f) motion is properly supported, a district court may refuse to allow additional discovery if it deems the request to be based on speculation as to what potentially could be discovered.").

No different conclusion obtains as to Halebian's requests for information regarding the Trustees' compensation. As earlier discussed, absent any basis to think that the investment advisors played a role in setting that compensation, or that the compensation was "far greater" than in other cases, the requested discovery would not alter the resolution of this derivative lawsuit and, thus, the district court reasonably concluded that further discovery was unnecessary. See S. & S. Realty Corp. v. Kleer-Vu Indus., Inc., 575 F.2d 1040, 1044 (2d Cir. 1978).

2.   Motion To Amend

Halebian submits that the district court abused its discretion in denying him leave to amend. Having considered and rejected in our summary judgment analysis Halebian's proposed new allegations that the Trustees lacked independence, we agree with the district court that amendment on this ground would be futile. See Holmes v. Grubman, 568 F.3d 329, 334 (2d Cir. 2009). We similarly identify futility in Halebian's request to amend to add a new echo voting claim, which the district court denied on grounds of undue delay. See Hutchinson v. Deutsche Bank Sec., Inc., 647 F.3d 479, 491 (2d Cir. 2011) (affirming denial of leave to amend on different ground than district court).

Whereas Halebian had previously alleged that the Trustees breached their fiduciary duty of <u>disclosure</u> in permitting the illegal use of echo voting, his proposed amendment characterizes this same conduct as a breach of the duties of <u>loyalty and care</u>.  To the extent this restyled echo voting claim is derivative, it would be futile because Halebian failed to make the requisite § 7.42 demand.  See <u>Halebian II</u>, 590 F.3d at 207 n.8 ("Halebian does not contest that, assuming the claims [including the echo voting claim] are in fact derivative, they fail to comply with section 7.42.").  Insofar as Halebian's restyled echo voting claim can be characterized as direct, it suffers from the same fatal flaw as the claim we rejected in <u>Halebian II</u>, namely, a failure plausibly to allege that the mere use of an illegal voting procedure, absent sufficient allegations that the Trustees knew or should have known that echo-voting was illegal, is a breach of fiduciary duty.  See <u>id.</u> at 210; <u>see</u> <u>Boston Children's Heart Found., Inc. v. Nadal-Ginard</u>, 73 F.3d 429, 433 (1st Cir. 1996) ("[I]f officers or directors act in good faith, albeit imprudently, they are not subject to personal liability absent clear and gross negligence in their conduct.").  Continuing to rely on September 2, 2005 Board minutes, which discuss the SEC's designation of approval of the investment advisory agreement as "non-routine" for purposes of prohibiting NYSE members from echo voting, Halebian argues that "[i]f permitted the opportunity, plaintiff will prove that 'non routine event' is a term of art which would be understood by anyone experienced with public companies (as was the trustee-defendants) as meaning that no mere record owner could vote without direction from the beneficial owner."  Appellant's Br. 12 n.6.  Halebian had this opportunity, however, when he made these same arguments

14

based on the same evidence in Halebian II.  Because he fails to demonstrate how the alleged unlawfulness of echo voting in and of itself yields different results depending on whether the alleged fiduciary breach is one of loyalty and care or one of disclosure, we conclude that the proposed amendment would be futile and affirm the district court's denial of leave to amend.

We have considered Halebian's remaining arguments on appeal and find them to be without merit.   Accordingly, the order of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

